**KEITH A. ROBINSON, Esq.**
(CSBN 126246)
ATTORNEY AT LAW
2945 Townsgate Road, Suite 200
Westlake Village, CA  91361
Tel: 310.849.3135
Fax: 818.279.0604
keith.robinson@karlawgroup.com

**SHARP LAW, LLP**
Rex A. Sharp*
W. Greg Wright*
Scott B. Goodger*
5301 West 75th Street
Prairie Village, Kansas 66208
Tel: 913-901-0505
Fax: 913-901-0419
rsharp@midwest-law.com
gwright@midwest-law.com
sgoodger@midwest-law.com
*(*pro hac vice* forthcoming)

Attorneys for Plaintiff Shelly Nash Fitzgerald, as Trustee of The Jackson Family Mineral Trust, on behalf of itself and others similarly situated.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| **SHELLY NASH FITZGERALD, as Trustee of THE JACKSON FAMILY MINERAL TRUST, on behalf of itself and a class of similarly situated persons,**<br><br>Plaintiff,<br><br>v.<br><br>**Chevron U.S.A. INC.**<br><br>Defendants | Case No.<br><br>**COMPLAINT**<br>**CLASS ACTION**<br><br>1. Breach of Lease<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Shelly Nash Fitzgerald, as Trustee of the Jackson Family Mineral Trust ("Plaintiff"), on behalf of itself and the Class defined below, for its class action complaint against Defendant Chevron U.S.A. Inc. ("Defendant" or "Chevron"), alleges:

## FACTUAL ALLEGATIONS

1. This is a single count (breach of lease) royalty underpayment class action controlled by the plain language of oil and gas leases that Defendant or its predecessors in title drafted.

---
Page 1
COMPLAINT – CLASS ACTION

2. Plaintiff brings claims to remedy Defendant's systematic breach of express duties under the leases to pay royalties to Plaintiff and members of the Class for natural gas "used off the lease."[1]

3. Plaintiff is the successor in interest Lessor, and Defendant is the successor in interest Lessee, under the attached Lease (the "Lease," **Exhibit 1**). Defendant is the operator of the Jackson, S P well on the Lease.

4. The relevant portion of the royalty clause of the Lease is in Paragraph 4, which provides for payment of royalty on gas as follows:

> 4. The lessee shall monthly pay lessor as royalty on gas marketed from each well where gas only is found one-eighth (1/8) of the proceeds if sold at the well, or if marketed by lessee off the leased premises, then one-eighth (1/8) of its market value at the well. The lessee shall pay the lessor: (a) one-eighth (1/8) of the proceeds received by the lessee from the sale of casinghead gas, produced from any oil well; (b) one-eighth (1/8) of the value, at the mouth of the well, computed at the prevailing market price, of the casinghead gas, produced form any oil well and used by lessee off the leased premises for any purpose or used on the leased premises by the lessee for purposes other than the development and operation thereof, ….

5. The on-lease free use clause of the Lease is also in Paragraph 8, and provides:

> 8. The lessee shall have the right to use free of cost, gas, oil and water found on said land for its *operations thereon*, except water from the wells of the lessor. (*Emphasis added*).

6. This on-lease free use clause expressly allows gas to be used only on the lease premises, so royalty must be paid for gas used off the lease premises ("Off Lease Use of Gas" or "OLUG").

---

[1] The claims here involve only gas, not oil, and more specifically only gas used off the lease premises. The claims do not concern the use of gas on-lease, which the leases expressly authorize in the on-lease free use clause.

7. Plaintiff's Lease and the members of the Class's leases contain the on-lease free use clause requiring Defendant to pay royalty on OLUG.

8. Although the Lease and the members of the Class's leases expressly provide for the payment of royalty on OLUG, Defendant does not do so.

9. Defendant concealed the systematic underpayment of royalty from Plaintiff and the members of the Class by falsely representing on the check stubs provided monthly to Plaintiff and the members of the Class that Defendant was paying royalty on the full volume and value of production from their wells, when in fact, it was not.

    a. ***Plaintiff and the Class Are Not Part of the Oil and Gas Industry and Do Not Have Expertise in How Midstream Gas Services Are Performed and When Gas Is or Is Not Used Off the Lease.*** While a midstream expert may know when and how gas is used off the lease, or if it is, because much of the midstream equipment runs on electric power (including processing plants) an individual royalty owner does not have that general midstream knowledge, let alone the specific knowledge of a midstream marketer or expert. Nor does an individual owner have the staff and resources of a major operator.

    b. ***Defendant Expected Plaintiff and the Class to Rely on Monthly Check Stubs.*** Defendant provided monthly accountings of the volume and value of gas from each well to Plaintiff and members of the Class and expected each to rely on the representations thereon.

    c. ***Plaintiff and the Class Did Rely on the Representations and Omissions on the Monthly Check Stubs.*** Unknowing that anything was awry, Plaintiff and the members of the Class relied on the affirmative representations on the monthly check stubs that they were being paid on the full volume and at the proper value for all gas, and on the omissions

that no deductions were being taken for off lease use of gas, by both cashing their monthly checks and by not suing earlier.

d.   ***Plaintiff and the Class Had No Notice that OLUG Was Not Being Paid For.*** There was nothing on the monthly check stubs that indicated or even raised an objective reasonable suspicion that Defendant was not paying royalty on gas used off the lease. No public data would have suggested it either.

e.   ***Plaintiff and the Class Could Not Have Discovered the Accounting Tricks by the Exercise of Reasonable Diligence.*** There was no amount of digging through public data or sources that would have revealed that Defendant was not paying royalty on gas used off the lease. The materials that would have shown that information would have been midstream gas contracts and monthly midstream plant statements, both of which Defendant kept confidential and away from Plaintiff and other members of the Class.

f.   ***Defendant Owed Plaintiff and the Class a Special Relation of Trust When Accounting to Them.*** Because everything that happens with respect to accounting for the gas from Plaintiff and the Class Wells is within Defendant's unique and sole knowledge and control, Defendant knows that it has a special trust relationship, even if short of a fiduciary duty. Defendant controls every aspect of the relationship: it produces the gas, it signs the midstream contracts, it accepts payment, it calculates the royalties, and it makes the distributions to itself and to royalty owners. Royalty owners are not involved in any one of these steps, and they are powerless to stop any accounting tricks Defendant engages in. It is an asymmetrical power imbalance that permits Defendant to take advantage of royalty owners and conceal cheating on royalty payments.

      g.    ***Estoppel Applies Based on All of the Above Facts***. Plaintiff could not have discovered the wrongdoing, which was fraudulently concealed, such that Defendant is equitably estopped from claiming a statute of limitations defense in this case.

10. Plaintiff brings this action to recover royalty for OLUG that Defendant owes Plaintiff and the members of the Class under the express terms of their oil and gas leases.

## JURISDICTION

11. **Jurisdiction.** This Court has original subject matter jurisdiction over the claims asserted in this complaint under 28 U.S.C. § 1332(d), because the proposed class has more than 100 members, at least one member of the Class is a citizen of a State different from Defendant, the parties are minimally diverse, and the amount in controversy exceeds $5 million.

12. This Court has personal jurisdiction over Defendant because its principal place of business is in this judicial district and it regularly transacts business within this judicial district.

## VENUE

13. **Venue.** Venue in this judicial district is proper under 28 U.S.C. §1391 because: (1) a substantial part of the events or omissions giving rise to the claims occurred in Contra Costa County, which is within this judicial district; (2) Defendant is subject to this Court's personal jurisdiction with respect to this action; (3) Defendant is a resident of this judicial district; and (4) Defendant does substantial continuous business here.

14. **Intradistrict Assignment.** Pursuant to Civil L.R. 3-2(c) and (d), this action should be assigned to the Oakland Division because a substantial part of the events or omissions giving rise to the claims occurred at Defendant's principal place of business in Contra Costa County, which is within the Oakland Division.

## PARTIES

15. Plaintiff Shelly Nash Fitzgerald, as trustee of the Jackson Family Mineral Trust, is a citizen and resident of the State of Idaho. Defendant pays royalty to Plaintiff on the Jackson, S P well located in Hansford County, Texas.

16. Defendant is a corporation believed to be organized under the laws of the State of Pennsylvania and its principal place of business is located at 6001 Bollinger Canyon Road, San Ramon, Contra Costa County, California 94583. Defendant may be served by serving its registered agent CSC – Lawyers Incorporating Service at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

17. The acts charged in this Complaint as having been done by Defendant were authorized, ordered, or done by officers, agents, affiliates, employees, or representatives, while actively engaged in the conduct or management of Defendant's business or affairs, and within the scope of their employment or agency with Defendant.

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action individually and, pursuant to Rule 23(a) and (b)(3), as the representative of a Class defined as follows:

> All current royalty owners in Texas wells where Chevron U.S.A. Inc. (including its affiliated predecessors) was the operator (or a working interest owner who marketed its share of gas and directly paid royalties to the royalty owners) from April 1, 2011 to the date Class Notice is given under oil and gas leases which expressly contain the on-lease free use clause.
>
> Excluded from the Class are: (1) agencies, departments or instrumentalities of the United States of America, including but not limited to the U.S. Department of the Interior (the United States, Indian tribes, and Indian allottees); (2) Defendant and its affiliates, officers, and directors; (3) any publicly traded entity (and its affiliates) that produces, gathers, processes, or markets gas; (4) the claims of royalty owners to the extent covered by

arbitration clauses or prior settlement agreements, if any, still in effect on the date this lawsuit was filed; and (5) royalty paid by Defendant only as a pass-through for other non-affiliated entities.

19. The members of the Class are so numerous that joinder of all members is impracticable, numbering in the thousands.

20. Defendant markets or has marketed gas from thousands of Class Wells that produce gas. Defendant holds a working interest in these wells, with at least one, and usually multiple, royalty owners for each well.

21. Defendant has within its possession or control records that identify all persons to whom it (including affiliated predecessors and those for whom they are legally responsible) have paid royalties from Class Wells during the Class Period.

22. The questions of fact or law common to Plaintiff and the Class include, without limitation, one or more of the following:

> (a) Do the express terms of Plaintiff and the members of the Class's oil and gas leases obligate Defendant to pay royalty on gas used off the leased premises?
>
> (b) Did Defendant fully pay Plaintiff and the members of the Class royalty on gas used off the leased premises?
>
> (c) Did Defendant breach the express terms of Plaintiff and the members of the Class's oil and gas leases by failing to fully pay royalty on gas used off the leased premises?

23. Plaintiff is typical of other members of the Class because Plaintiff's and the members of the Class's leases expressly obligate Defendant to pay royalty on gas used off the leased premises, and Defendant pays royalty to Plaintiff and other members of the Class using a common methodology which does not pay royalty on such gas.

24. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff understands its duties as Class representative. Plaintiff' interests

in recovering royalty on gas used off the leased premises do not conflict with the recovery by the members of the Class, who are owed the same duties by Defendant to be paid the full amount of royalty owed on gas used off the leased premises. Plaintiff has retained counsel competent and experienced in class action and royalty owner litigation.

25. This action is properly maintainable and should be certified as a class action. Common questions of law or fact exist as to all members of the Class, and those common questions predominate over any individualized questions that would require evidence from each individual member of the Class. *See* ¶ 22, above.

26. There is no need for individual members of the Class to testify in order to establish Defendant's liability or damages sustained by Plaintiff and members of the Class.

27. Class action treatment is appropriate in this matter and is superior to the alternative of numerous individual lawsuits by members of the Class. Class action treatment will allow a large number of similarly situated individuals to prosecute their common claims in a single forum, simultaneously, efficiently, and without duplication of time, expense and effort on the part of those individuals, witnesses, the courts and/or Defendant. Likewise, class action treatment will avoid the possibility of inconsistent and/or varying results in this matter arising out of the same facts. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action and no superior alternative forum exists for the fair and efficient adjudication of the claims of all members of the Class.

28. The amounts at stake for individual members of the Class, while significant in the aggregate, are not great enough to enable them to enlist the assistance of competent legal counsel to pursue their claims individually. In the absence of a class action in this matter, Defendant will likely retain the benefit of its wrongdoing.

**COUNT I—Breach of Lease**

29. Plaintiff and the Class incorporate by reference the allegations set forth in all other paragraphs of this Complaint.

30. Plaintiff and the other members of the Class, or their predecessors in title, entered into written, fully executed oil and gas leases with Defendant or its predecessors.

31. Plaintiff's and the other members of the Class's leases contain express on-lease free use clauses, which obligated and required Defendant to pay royalty on all OLUG.

32. Defendant did not pay Plaintiff and the other members of the Class royalty on all OLUG.

33. At all material times, Plaintiff and the members of the Class have performed the terms and obligations under the Class leases, and all conditions precedent have been satisfied.

34. Defendant breached Plaintiff's and the Class's leases by using and/or contracting to allow third parties to use gas off the leased premises without paying royalty on that gas, and by its actions and/or inactions in underpaying royalty or not paying royalty on all gas used off the leased premises.

35. As a result of Defendant's breaches, Plaintiff and the members of the Class have been damaged through underpayment of the actual royalty amounts due under the leases.

**DEMAND FOR JURY TRIAL**

36. Plaintiff is entitled to and hereby demands a jury trial in this matter.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for an Order and Judgment against Defendant as follows:

a. Certifying this action pursuant to Rule 23(a) and (b)(3) as a class action, and appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel, with reasonable notice to be given to members of the Class;

b. Awarding the Class actual damages in an amount in excess of $5 Million, including pre-judgment and post-judgment interest thereon at the highest rate allowed by law or equity, for Defendant's breach of lease;

c. Granting the Class the costs of prosecuting this action together with reasonable attorney's fees and expenses out of the common fund recovery; and

d. Granting such other relief as this Court may deem just, equitable and proper.

Dated: April 13, 2021         Respectfully Submitted,

Attorneys for Plaintiff and the Proposed Class

_/s/ Keith A. Robinson_____
KEITH A. ROBINSON, Esq. (CSBN 126246)
2945 Townsgate Road, Suite 200
Westlake Village, CA  91361
Tel: 310.849.3135
Fax: 818.279.0604
keith.robinson@karlawgroup.com

Rex A. Sharp, *pro hac vice* forthcoming
W. Greg Wright, *pro hac vice* forthcoming
Scott B. Goodger, *pro hac vice* forthcoming
SHARP LAW, LLP
5301 West 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
rhudson@midwest-law.com
sgoodger@midwest-law.com

# DEMAND FOR JURY TRIAL

Plaintiff on behalf of itself and others similarly situated demands a trial by jury for all issues so triable under the law.

Dated: April 13, 2021

                                        Respectfully submitted,

                                    By:   */s/ Keith A. Robinson*
                                          Keith A. Robinson
                                          Attorney for Plaintiff

# EXHIBIT 1

5

LC 21/451

production continues.

14. If within the primary term of this lease, the well or wells on the leased premises, or on the consolidated gas leasehold estate, shall cease to be productive, this lease shall not terminate, provided operations for the drilling of a well on the leased premises, or on the consolidated gas leasehold estate, shall be commenced before or on the next ensuing rental payment date; or, provided lessee begins or resumes the payment of rentals in the manner and amount hereinbefore provided. It is agreed, however, that the completion of a well producing or capable of producing gas, upon the property hereinabove described, or the inclusion of such property in a consolidation unit producing or capable of producing gas as provided by paragraph number 9 hereof, shall constitute full and complete development with respect to the gas leasehold estate hereby granted. If, upon, or after the expiration of the primary term of this lease, the well or wells on the leased premises, or on the consolidated gas leasehold estate, shall be incapable of producing, this lease shall not terminate provided lessee resumes operations for drilling a well on the leased premises or on the consolidated gas leasehold estate within one hundred twenty (120) days from such cessation, and this lease shall remain in force during the prosecution of such operations and, if production results therefrom, then as long as production continues.

15. It is contemplated and agreed by both lessor and lessee that this lease shall at all times and in all respects be subject to valid orders, rules and regulations of any duly constituted authority having jurisdiction of the subject matter hereof.

16. This lease and all its terms, conditions, and stipulations shall extend to and be binding on all the heirs, grantees, administrators or assigns of said Lessor or Lessee.

IN WITNESS WHEREOF, we sign the day and year first above written.

(Internal Revenue Stamps  
$2.20 attached and cancelled)

          Sterling P. Jackson  
          Kent K. Jackson

THE STATE OF OKLAHOMA,  
COUNTY OF TEXAS

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared Sterling P. Jackson, a single man; and Kent K. Jackson, a single man; known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 2nd day of April, A.D. 1953.

          Merrill Kennedy  
          Notary Public in and for Texas County, Okla.  
(SEAL)        My commission Expires: 10-3-54

Filed for record the 20th day of July, A. D. 1953 at 8:30 o'clock A. M.  
Recorded this the 20th day of July, A. D. 1953 at 11:35 o'clock A. M.

          Fred J. Hoskins  
          Clerk County Court, Hansford County, Texas

By Susie C. Richardson  
    Deputy.

STERLING P. AND KENT K. JACKSON ------------------- SKELLY OIL COMPANY

---------------------- - OIL AND GAS LEASE ------------------

THIS AGREEMENT, Entered into this the 1st day of April, 1953 between Sterling P. Jackson, a single man; and Kent K. Jackson, a single man; hereinafter called lessor and Skelly Oil Company hereinafter called lessee, does witness:

1. That lessor, for and in consideration of the sum of One and no/100 Dollars ($1.00), in hand paid, and of the covenants and agreements hereinafter contained to be performed by the lessee, has this day granted and leased and hereby grants, leases and lets

unto the lessee for the purpose of mining and operating for and producing oil and gas, casinghead gas and casinghead gasoline, laying pipe lines, building tanks, storing oil, building powers, stations, telephone lines and other structures thereon to produce, save, take care of and manufacture all of such substances, and for housing and boarding employees, the following described tract of land in Hansford County, Texas to-wit:

> All of Section 51, Block 1, Washington County Railroad Co., Original Grantee; and containing 646 acres, more or less

2. This lease shall remain in force for a term ending August 30, 1958, and as long thereafter as oil, gas, casinghead gas, casinghead gasoline, or any of them is produced.

3. The lessee shall deliver to the credit of the lessor as royalty, free of cost, in the pipe line to which lessee may connect its wells the equal one-eighth part of all oil produced and saved from the leased premises, or at the lessee's option, may pay to the lessor for such one-eighth royalty the market price for oil of like grade and gravity prevailing on the day such oil is run into the pipe line, or into storage tanks.

4. The lessee shall monthly pay lessor as royalty on gas marketed from each well where gas only is found one-eighth (1/8) of the proceeds if sold at the well, or if marketed by lessee off the leased premises, then one-eighth (1/8) of its market value at the well. The lessee shall pay the lessor: (a) one-eighth (1/8) of the proceeds received by the lessee from the sale of casinghead gas, produced from any oil well; (b) one-eighth (1/8) of the value, at the mouth of the well, computed at the prevailing market price, of the casinghead gas, produced from any oil well and used by lessee off the leased premises for any purpose or used on the leased premises by the lessee for purposes other than the development and operation thereof, Lessor shall have the privilege at his own risk and expense of using gas from any gas well on said land for stoves and inside lights in the principal dwelling located on the leased premises by making his own connections thereto.

Where gas from a well or wells, capable of producing gas only, is not sold or used for a period of one year, lessee shall pay or tender as royalty, an amount equal to the delay rental as provided in paragraph (5) hereof, payable annually at the end of each year during which such gas is not sold or used, and while said royalty is so paid or tendered this lease shall be held as a producing property under paragraph numbered two hereof.

5. If operations for the drilling of a well for oil or gas on said land or for gas, on a consolidated leasehold estate of which this land is a part thereof, as contemplated in paragraph 9, are not commenced on or before August 30, 1954 this lease shall terminate as to both parties unless the lessee shall on or before that date, pay or tender to the lessor, or to the lessor's credit in the First National Bank at Guymon, Oklahoma, or its successors, which bank and its successors are the lessor's agent and shall continue as the depository of any and all sums payable under this lease, regardless of changes of ownership in said land or in the oil and gas, or in the rentals to accrue thereunder, the sum of Six hundred and forty six and no/100 Dollars ($646.00) which shall operate as rental and cover the privilege of deferring the commencement of drilling operations for a period of one year. In like manner and upon like payments or tenders, the commencement of drilling operations may be further deferred for like periods successively. All payments or tenders may be made by check or draft of lessee or any assignee thereof, mailed or delivered on or before the rental paying date. Notwithstanding the death of the lessor, or his successor in interest, the payment or tender of rentals in the manner provided above shall be binding on the heirs, devisees, executors, and administrators of such person.



6. If at any time prior to the discovery of oil or gas on this land and during the term of this lease, the lessee shall drill a dry hole, or holes, on this land, this lease shall not terminate, provided operations for the drilling of a well shall be commenced by the next ensuing rental paying date, or provided the lessee begins or resumes the payment of rentals in the manner and amount herein above provided; and in this event the preceding paragraphs hereof governing the payment of rentals and the manner and effect thereof shall continue in force.

7. In case said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the said lessor only in the proportion which his interest bears to the whole and undivided fee.

8. The lessee shall have the right to use free of cost, gas, oil and water found on said land for its operations thereon, except water from the wells of the lessor. When required by lessor, the lessee shall bury pipe lines below plow depth and shall pay for damages caused by its operations to growing crops on said land. No well shall be drilled nearer than 200 feet to the house or barn now on said premises without written consent of the lessor. Lessee shall have the right at any time during or after the expiration of this lease to remove all machinery, fixtures, houses, buildings and other structures placed on said premises, including the right to draw and remove all casing.

9. As to the gas leasehold estate hereby granted (excluding casinghead gas produced from oil wells), lessee is expressly granted the right and privilege to consolidate said gas leasehold with any other adjacent or contiguous gas leasehold estates to form a consolidated gas leasehold estate which shall not exceed a total area of 640 acres; and in the event lessee exercises the right and privilege of consolidation, as herein granted, the consolidated gas leasehold estate shall be deemed treated and operated in the same manner as though the entire consolidated leasehold estate were originally covered by and included in this lease, and all royalties which shall accrue on gas (excluding casinghead gas produced from oil wells), produced and marketed from the consolidated estate, including all royalties payable hereunder, shall be prorated and paid to the lessors of the various tracts included in the consolidated estate in the same proportion that the acreage of each said lessor bears to the total acreage of the consolidated estate, and a producing gas well on any portion of the consolidated estate shall operate to continue the oil and gas leasehold estate hereby granted so long as gas is produced therefrom.

10. If the estate of either party hereto is assigned (and the privilege of assigning in whole or in part is expressly allowed), the covenants hereof shall extend to the heirs, executors, administrators, successors and assigns, but no change of ownership in the land or in the rentals or royalties shall be binding on the lessee until after notice to the lessee and it has been furnished with the written transfer or assignment or a certified copy thereof.

11. If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may be hereafter divided by sale, devise, or otherwise, or to furnish separate measuring or receiving tanks. It is hereby agreed that, in the event this lease shall be

assigned as to a part or as to parts of the above described lands, and the holder or owner of any such part or parts shall fail or make default in the payment of the proportionate part of the rent due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said land upon which the said lessee or any assignee hereof shall make due payment of said rentals. If at any time there be as many as four parties entitled to rentals or royalties, lessee may withhold payments thereof unless and until all parties designate, in writing, in a recordable instrument to be filed with the lessee, a common agent to receive all payments due hereunder, and to execute division and transfer orders on behalf of said parties and their respective successors in title.

12. Lessor hereby warrants and agrees to defend the title to the land herein described and agrees that the lessee, at its option, may pay and discharge any taxes, mortgages, or other liens existing, levied, or assessed on or against the above described lands and, in event it exercises such option, may pay and discharge any taxes, mortgages, or other liens existing, levied, or assessed on or against the above described lands and, in event it exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying to the discharge of any such mortgage, tax or other lien, any royalty or rentals accruing hereunder.

13. Notwithstanding anything in this lease contained to the contrary, it is expressly agreed that if lessee shall commence drilling operations at any time, while this lease is in force, this lease shall remain in force and its term shall continue so long as such operations are prosecuted and, if production results therefrom, then as long as production continues.

14. If, within the primary term of this lease, the well or wells on the leased premises, or on the consolidated gas leasehold estate, shall cease to be productive, this lease shall not terminate, provided operations for the drilling of a well on the leased premises or on the consolidated gas leasehold estate, shall be commenced before or on the next ensuing rental payment date; or, provided lessee begins or resumes the payment of rentals in the manner and amount hereinbefore provided. It is agreed, however, that the completion of a well producing or capable of producing gas, upon the property hereinabove described, or the inclusion of such property in a consolidation unit producing or capable of producing gas as provided by paragraph number 9 hereof, shall constitute full and complete development with respect to the gas leasehold estate hereby granted. If, upon, or after the expiration of the primary term of this lease, the well or wells on the leased premises, or on the consolidated gas leasehold estate, shall be incapable of producing, this lease shall not terminate provided lessee resumes operations for drilling a well on the leased premises or on the consolidated gas leasehold estate within one hundred twenty (120) days from such cessation, and this lease shall remain in force during the prosecution of such operations and, if production results therefrom, then as long as production continues.

15. It is contemplated and agreed by both lessor and lessee that this lease shall at all times and in all respects be subject to valid orders, rules and regulations of any duly constituted authority having jurisdiction of the subject matter hereof.

16. This lease and all its terms, conditions, and stipulations shall extend to and be binding on all the heirs, grantees, administrators or assigns of said lessor or lessee.

IN WITNESS WHEREOF, we sign the day and year first above written.

(Internal Revenue Stamps          Sterling P. Jackson
$2.20 attached and cancelled)     Kent K. Jackson

LC 21/455

THE STATE OF OKLAHOMA,
COUNTY OF TEXAS

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared Sterling P. Jackson, a single man; and Kent K. Jackson, a single man; known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 2nd day of April A.D. 1953.

Merrill Kennedy
Notary Public in and for Texas County, Okla.
(SEAL)   My Commission Expires:  10-3-54

Filed for record the 20th day of July, A. D. 1953 at 8:30 o'clock A. M.
Recorded this the 20th day of July, A. D. 1953 at 1:55 o'clock P. M.

Fred J. Hoskins
Clerk County Court, Hansford County, Texas

By *[signature]*
Deputy.

R. V. BEBOUT — — — — — — — — — — — — — — — — — — — — — — JOSIE HART EVANS ET VIR
— — — — — — — — — — — RELEASE OF OIL, GAS AND MINERAL LEASE — — — — — — — — —

THE STATE OF TEXAS
COUNTY OF HANSFORD    KNOW ALL MEN BY THESE PRESENTS:

That I, R. V. Bebout do hereby release, remise and relinquish unto Josie Hart Evans and husband A. W. Evans, their heirs, administrators and assigns, all my right, title and interest in and to that certain oil, gas and mineral lease, dated June 20, 1944, executed by said Josie Hart Evans and husband A. W. Evans to R. V. Bebout, lessee, and recorded in Volume 11 page 8 of the Lease and Contract Records of Hansford County, Texas, in so far ONLY as said lease covers and includes the following described land in Hansford County, Texas, to-wit:

   East Half of the Southeast Fourth (S/2 of SE/4) of
   Section 274, Block 2, G. H. & H. Ry. Co., Hansford
   County, Texas, containing 80 acres, more or less

Witness my hand on this the 13th day of July A.D., 1953.

R. V. Bebout
(R.V.Bebout)

THE STATE OF TEXAS
COUNTY OF TARRANT

Before me, the undersigned authority, a Notary Public in and for said County and State, on this day personally appeared R. V. Bebout, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office, on this the 13th day of July, A.D. 1953.

Elva Lee Harwell
Notary Public  Tarrant County, Texas.
ELVA LEE HARWELL
(SEAL)   Notary Public, Tarrant County, Texas

Filed for record the 23rd day of July, A. D. 1953 at 11:35 o'clock A. M.
Recorded this the 23rd day of July, A. D. 1953 at 1:50 o'clock P. M.

Fred J. Hoskins
Clerk County Court, Hansford County, Texas

By *[signature]*
Deputy.